## Brown Trust

*Walter Y. Anthony*, for accountant.

KLEIN, P. J., June 28, 1957.—William A. Brown died on January 25, 1929, leaving a will, dated November 18, 1927, by which he provided, inter alia: "I give and bequeath the sum of One thousand dollars in trust as an endowment fund to the Women's Homeopathic Hospital Broad and Fitzwater Street in memory of my mother Harriet Pinkney born in Phila. Pa.

Dec. 30th, 1819 died April 18th, 1894 one half of the interest from the said endowment to be added to the endowment every year, the other half of the interest to be used as the Hospital managers think best, . . .

". . . and the Integrity Trust Company to be trustee for the endowment fund also trustee for the trust fund."

The fund presently accounted for was awarded to the present accountant, as substituted trustee, by adjudication of Stearne, J., dated October 8, 1940, and the occasion of the filing of the present account is stated to be the dissolution of Women's Homeopathic Hospital, successor to Women's Southern Homeopathic Hospital and Broad Street Hospital.

This case clearly demonstrates the folly of establishing minuscule perpetual charitable trusts. In spite of the lofty motives of testator, his testamentary plan, simple as it is, has proven to be wholly impractical.

The Women's Southern Homeopathic Hospital (erroneously designated in the will as Women's Homeopathic Hospital) became financially embarrassed in 1931, as a result of which it reorganized and changed its name to Broad Street Hospital. In 1946 a mortgage on the hospital was foreclosed. Litigation ensued, at the conclusion of which the hospital ceased operations in 1949. In order to dispose of its endowments and funds held in trust, including the two trusts created by testator in this case, a merger was effected with the Women's Homeopathic Hospital on North 20th Street.

The merged hospital also found itself beset with insurmountable financial problems. As a result, in 1951, it sold its entire plant to the Osteopathic Hospital of Philadelphia. In April 1952 the Women's Homeopathic Hospital filed a petition with the Court of Common Pleas No. 4 to dissolve its corporate existence.

Masters were appointed in 1952 by the common pleas court and by the orphans' court to hold hearings and make recommendation for the cy pres application of the various endowments and trust funds held by the merged institutions.

Extensive hearings were held by the masters at which perhaps 50 different individual hospitals and other eleemosynary institutions and organizations appeared and made claim to the various funds. The masters, after hearing a great many witnesses and the legal arguments of many counsel, filed reports making recommendations for disposition of the funds. The proceedings in this court have been concluded but certain phases of the litigation are still pending in the common pleas court.

The present case was not included among those referred to Mr. Rosenbaum, the orphans' court master, because the fund is so small, its principal being less than $800, because John J. Mitchell, Jr., counsel for the accountant, died shortly after the account was filed.

Mr. Mitchell's office associates, W. LeRoy McKinley and Walter Y. Anthony, have succeeded him as attorney for the accountant.

This trust has been an unhappy one since its inception. The plan directing the trustee to add one half of the income to the principal of the trust and to use the other for the hospital purposes, has by reason of its small size proven to be unworkable and has failed of its purpose. The most that a trust of this nature could expect to earn over the years would be about four percent per annum. At this rate, the hospital would have the benefit of less than $20 a year. In these days of inflation and ever-increasing hospital costs, such a sum is pitifully inadequate to serve any useful purpose.

The trust has also suffered by reason of the failure and subsequent liquidation of the Integrity Trust Com-

pany, the original trustee, and a resulting diminution of this already insignificant corpus.

It would be absurd to refer this case to a master now, and invite the many claimants, who are battling over the hospital endowments, to engage in a contest for this tiny fund. The cost of such litigation would involve many times the amount involved. It would be absurd to embark upon proceedings which would consume the entire principal and leave nothing to award to a successor charity when selected. Such a course would make a mockery of our judicial processes.

It would be equally unfeasible for this court, with its busy calendar, to spend the time required to hear and dispose of this claim. De minimis non curat lex: Bristol-Myers Company v. Lit Brothers, Inc., 336 Pa. 81 (1939). Considering the complexity of a cy pres proceeding, and the costs, expenses and time involved, the situation before us for consideration must be regarded as "de minimis".

Mr. Mitchell's files disclosed that he had received notice of two claims to the fund. The first was submitted by Rodney T. Bonsall, on behalf of the Osteopathic Hospital, and the other by Joseph S. Conwell, on behalf of Hahnemann Hospital.

The auditing judge, at a meeting held in his chambers in advance of the audit, advised Mr. Anthony that in view of the size of the fund he would assume responsibility for its disposition without further notice to the institutions which have made claim, or to others who might consider doing so. The auditing judge therefore directed Mr. Anthony to study the report filed by Samuel R. Rosenbaum, the master in the estate of Edward T. Dobbins, in which a large trust fund left to the hospital was involved, and to conduct an investigation to ascertain, if possible, the circumstances which induced testator to create the trust. When this was concluded, Mr. Anthony was

directed to make such recommendations with respect to the disposition of the fund as he deemed appropriate.

At the audit, held May 9, 1957, Mr. Anthony reported that he read the report in the Dobbins Estate and then conferred with the trust department of Provident Tradesmens Bank and Trust Company, successor by reason of a series of mergers to Land Title Bank and Trust Company, substituted trustee. No information concerning testator or his intentions was obtained from this source.

Mr. Anthony then located Harold L. Brown, testator's nephew and life tenant under the trust of the residuary estate. Mr. Brown stated that the reason for the creation of these funds was that this hospital cared for testator's sister, Matilda Hunt Brown, for about a year in her terminal illness with cancer, at a time when no other hospital would admit her.

Mr. Anthony therefore recommended that the principal of the fund, together with all accumulated income, be awarded outright to Hahnemann Medical College and Hospital, free of the trust. Mr. Anthony stated further:

". . . The reasoning behind the request is this: first of all, Hahnemann is the closest thing we have in Philadelphia today to a homeopathic hospital. Homeopathy as a course is given in only three medical schools in the United States, one of which is Hahnemann, and in that institution it is offered as an elective course. Secondly, during the active years of Women's Homeopathic Hospital and Women's Southern Homeopathic Hospital a large number on their medical staff received their training at Hahnemann, and there were advisory connections between the two institutions. It was apparent, furthermore, from the fact that Women's Southern Homeopathic Hospital was in South Philadelphia and the funds eventually benefited Wom-

98

en's Homeopathic Hospital in North Philadelphia, that this testator was not concerned with the geographical area in which either Women's Southern Homeopathic Hospital or Women's Homeopathic Hospital ministered. Furthermore, Hahnemann Hospital has the second oldest cancer-detection clinic in the United States, and since this testator left this money in appreciation of the care given to his sister when she was dying of cancer, it was felt that that would also be a very prominent reason for awarding this fund to Hahnemann Medical College and Hospital. . . ."

The auditing judge is fully satisfied that Mr. Anthony's recommendation, under the existing factual situation, is a fair and sensible one and it will be adopted by the court.

The administration of this trust would obviously be unprofitable for any fiduciary, individual or corporate. The increasing complexities of trust management today and the many forms which must be filed to comply with the tax laws and other governmental regulations would constitute a real nuisance in a trust of this size. No one can be asked reasonably to assume responsibility for investing and reinvesting the corpus of this trust and keeping the records necessary to comply with its provisions for the recompense it could possibly receive. Even if the entire income were used to compensate the trustee, it would still be an undesirable assignment. Furthermore, this trust, as presently constituted, could not, under any circumstances, furnish any worthwhile or substantial benefits to any charity that might be selected. To preserve this trust would be both silly and impractical. Its continued existence cannot be justified. The balances shown by the account will accordingly be awarded outright to the Hahnemann Hospital.